## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## TAMPA DIVISION

UNITED STATES OF AMERICA,

v.                                                   Case No.: 8:10-cr-00023-EAK-EAJ

LEONDRE ROLAND JONES

_____/

## ORDER ON DEFENDANTS' MOTION TO DECLARE TITLE 21 U.S.C., SECTION 841 UNCONSTITUTIONAL AND MOTION TO DISMISS COUNTS THREE, FOUR, AND FIVE OF THE INDICTMENT

This cause comes before the Court for consideration of Defendant Leondre Roland Jones'

Motion to Declare Title 21 U.S.C., Section 841 Unconstitutional, Motion to Dismiss Counts

Three, Four, and Five of the Indictment, and Memorandum of Law in support thereof (Dkt. 33)

(hereinafter Motions), and the Government's response in opposition to Defendant's two motions

(Dkt. 34) (hereinafter Response). For the reasons set forth below, the Defendant's Motions are

**denied**.

### BACKGROUND

This is a brief summary of the facts of Leondre Roland Jones' Motions pending before

the Court. Pursuant to Federal Rule of Criminal Procedure 12, the Defendant, Leondre Roland

Jones (hereinafter Defendant), moves the Court to declare Title 21, United States Code, Section

841 unconstitutional and to dismiss Counts Three, Four, and Five of the Indictment in the instant

case as being unconstitutional as applied.

The Defendant is named in five (5) counts in an Indictment. In Counts Three, Four, and

Five of the Indictment, the Defendant, a black male, is charged with violating Title 21 U.S.C.

Sections 841(a)(1) and 841(b)(1)(B) for distributing five (5) or more grams of cocaine base, or

"crack cocaine", which carries a mandatory minimum prison sentence of five (5) years

imprisonment according to Title 21 U.S.C. Section 841(b)(1)(B)(iii). If convicted of any or all

the enumerated counts, the Defendant will be subject to this minimum mandatory prison

sentence provided for by said statute.

Title 21 U.S.C. Section 841(b)(1)(B) established a mandatory minimum sentence of five

(5) years for persons possessing or distributing five hundred (500) grams or more of powder

cocaine or five (5) grams or more of cocaine base, the latter of which is the violation at issue

here. Therefore, the statutory construction results in a powder-to-base ratio of 100:1, or, in other

words, a punishment for cocaine base offenses that is one hundred (100) times more than powder

cocaine offenses involving the same quantity.

The Defendant's motion to dismiss these three counts alleges that 21 U.S.C. § 841 violate

the Cruel and Unusual Punishment, Due Process, and Equal Protection Clauses of the United

States Constitution. (Dkt. 33, p. 2).

## DISCUSSION

The Defendant's Motions and the Government's Response raise two main issues that

warrant analysis. First, the Government contends that the Defendant lacks the requisite standing

to challenge the constitutionality of 21 U.S.C. § 841 as a violation of the Eighth Amendment

Cruel and Unusual Punishment Clause. (Dkt. 34, p. 3). Second, the Defendant claims that the

minimum mandatory base or crack cocaine sentencing provisions of 21 U.S.C. § 841 are

unconstitutional, and, thus, Counts Three, Four, and Five are unconstitutional as applied (Dkt.

33).

## I.  STANDING CHALLENGE

2

First and foremost, the Government objects to the Defendant's cruel and unusual punishment attack on the sentencing requirements laid out in 21 U.S.C. § 841 on the ground that the Defendant lacks standing to bring his claim. (Dkt. 34, p. 3). Therefore, the Court must address the question of ripeness of the constitutional challenges raised by the Defendant.

Standing is a threshold question in every case before a federal court. Article III, Section 2 of the United States Constitution underpins standing jurisprudence in that it limits the power of federal courts to decide "cases" and "controversies." *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*, 528 U.S. 167, 180 (2000). The standing inquiry, therefore, is the question of whether the litigant is entitled to have the court decide the merits of particular issues. *Allen v. Wright*, 468 U.S. 737, 750-51 (1984).

The essence of standing is whether the party invoking the court's jurisdiction has demonstrated a direct or "personal stake in the outcome" of the controversy. *Diamond v. Charles*, 476 U.S. 54, 62 (1986); *Baker v. Carr*, 369 U.S. 186, 204 (1962). This condition of a "personal stake", which has been refined by subsequent reformulation, has come to be understood as to require three elements. *Duke Power Co. v. Carolina Envtl. Study Group*, 438 U.S. 59 (U.S. 1978). In order to establish the irreducible constitutional minimum of Article III standing to challenge a law as unconstitutional, the party seeking review by the court must show the following: (1) he has personally suffered an "injury in fact"; (2) a fairly traceable causal connection between the alleged injury and the challenged action; and (3) a substantial likelihood that the injury will be redressed by a favorable decision. *Horne v. Flores*, 129 S. Ct. 2579, 2585 (2009) (citing *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992).

An injury in fact, the requirement embodied in the first prong, has been suffered where there is an invasion of a legally protected interest that is (a) concrete and particularized, and (b)

actual or imminent, not conjectural or hypothetical. *Horne*, 129 S. Ct. at 2585. Such an injury has also been described as one that is "actual or threatened distinct and palpable". *Diamond*, 476 U.S. at 62; *see also Gladstone, Realtors v. Bellwood*, 441 U.S. 91, 99-100 (1979); *Linda R.S. v. Richard D.*, 410 U.S. 614, 617-18 (1973). The validity of legislation is open to attack only by those persons whose constitutional rights are personally or directly affected by the application of the challenged law. *See Allen v. Wright*, 468 U.S. 737 (1984).

The Government maintains that the possibility that the Defendant *may* receive the minimum mandatory sentence *if* he is convicted does not constitute the requisite injury in fact necessary to bring such a claim. (Dkt. 34, p. 3). In fact, the Defendant admits that "he has not yet been sentenced and it is unknown if the minimum mandatory sentence would be applied at this time." (Dkt. 33, p. 7 n.11). Nevertheless, the Government's argument is unsuccessful.

In order to establish standing where a law has yet to be enforced against the party invoking the court's authority, that party "must show an actual and well-founded fear that the law will be enforced against [him]." *Virginia v. American Booksellers Ass'n*, 484 U.S. 383, 393 (1988); *see also O'Shea v. Littleton*, 414 U.S. 488, 495-96 (1974) (standing to challenge a statute is established if the party shows "a real and immediate threat that she will be prosecuted" under the challenged statute in the future); *Doctor John's, Inc. v. City of Roy*, 465 F.3d 1150, 1156 (10th Cir. 2006) (standing is established when "a credible threat of prosecution or other consequences following from the statute's enforcement is shown); *Pac. Captial Bank, N.A. v. Conneticut*, 542 F.3d 341, 350 (2d Cir. 2008) (to show injury, a party bringing a pre-enforcement challenge against a statute need not demonstrate to a certainty that it will be prosecuted under the statute, but only that it may legitimately fear that it will face enforcement of the statute); *State v. Benitez*, 395 So. 2d 514, 517 (Fla. 1981) (a party, not yet convicted but subject to criminal

4

prosecution, clearly has a sufficient personal stake in the penalty which the offense carries to have standing; this is wholly unlike cases where criminal defendants challenged portions of a statute having nothing to do with their prosecution).

If, according to the Supreme Court, standing, and, thus, an injury in fact, may be found where the law has yet to be enforced against the party so long as he can show a well-founded fear of enforcement or imminent threat of prosecution, then surely an injury in fact shall be found where, as here, the party invoking the court's authority has already been indicted and is facing trial. *See Younger v. Harris*, 401 U.S. 37, 41-42 (1971) (the Supreme Court found that, of the appellees challenging the constitutionality of a statute, the one who had been indicted and was being prosecuted for violation of a statute had an acute, live controversy; the other parties who had not been indicted, arrested, or even threatened by the prosecutor did not have standing).

Although, as the Government noted, the Defendant has yet to be convicted or sentenced, it is undisputed that the Defendant has been indicted and is being subject to a criminal prosecution for violation of Section 841, subsection (a). (Dkt. 33, p. 1, 7 n.11). A conviction, with the corresponding application of the minimum mandatory sentence[1], is not certain, but the indictment, itself, acts as a real and legitimate threat of the penalty that the charged offense carries. Contrary to the Government's contention, the Defendant has suffered an injury in fact because, although the injury suffered is not an actual injury, it is imminent or threatened.

Therefore, even though the Defendant has not been convicted, he has sufficient personal stake in this penalty-oriented statute for the Court to find that he possesses the requisite Article III standing to raise his constitutional attacks against Section 841.

---

[1] "[T]he district court remains bound by statutes designating mandatory minimum sentences" even after the remedial holding of *United States v. Booker*, 543 U.S. 220 (2005). *U.S. v. Castaing-Sosa*, 530 F.3d 1358, 1362 (11th Cir. 2008).

## II. CONSTITUTIONAL CHALLENGE

The Defendant alleges that 21 U.S.C. § 841 is unconstitutional as a violation of the

United States Constitution, namely, the Eighth and Fifth Amendments. Specifically, the

Defendant's Motions claim that "[t]he statutory punishments for powder and crack cocaine

offenses are disparate, arbitrary, and discriminatory," and, thus, violate the Cruel and Unusual

Punishment, Equal Protection, and Due Process Clauses of the United States Constitution. (Dkt.

33, p. 2). The Defendant bases these claims on several aspects of the statute: (1) Section

841(b)(1)(B)(iii) penalizes the distribution of five grams or more of crack cocaine with a

mandatory minimum sentence of five years; (2) this same punishment is applied to defendants

convicted of distribution of 500 grams or more of powder cocaine, resulting in a powder-to-base

ratio of 100:1, and thus, making the statutory punishment for crack cocaine harsher than that for

powder cocaine; and (3) the harsher sentences for crack cocaine disparately impact African

Americans who represent the majority of crack cocaine offenders. (Dkt. 33, p. 2-3).

However, the Court is not persuaded. As is discussed below, the Eleventh Circuit has

consistently held contrary to Defendant's claims, finding that 21 U.S.C. § 841 is constitutional,

despite challenges to various permutations of the Cruel and Unusual Punishment, Equal

Protection, and Due Process Clauses. Eleventh Circuit precedent is binding on this Court, unless

an Eleventh Circuit Court of Appeals en banc decision, a United States Supreme Court decision,

or subsequent legislation passed by Congress, are rendered undermining such precedent. *U.S. v.*

*Woodward*, 938 F.2d 1255, 1258 (11th Cir. 1991).

Furthermore, the Court has not found nor has the Defendant offered proof of any changes

in 21 U.S.C. § 841 or binding legal authority that warrant a departure from the jurisprudential

policy of stare decisis on this issue. Although there has been a development of new information

reported by the Sentencing Commission (hereinafter Commission) since 1995, it is not of such a nature that would merit a deviation from precedent. Additionally, there is nothing distinguishable about the Defendant's claims that would potentially render the crack cocaine sentencing provisions unconstitutional according to these three clauses.

### A.  Eighth Amendment: Cruel and Unusual Punishment Clause

The Eighth Amendment of the United States Constitution reads: "Excessive bail should not be required, nor excessive fines imposed, *nor cruel and unusual punishments inflicted.*" U.S. Const. Amend. 8 (emphasis added).

The Defendant suggests that the statutory minimum mandatory sentence he would face if convicted of a crack cocaine offense would be unconstitutional as cruel and unusual punishment in violation of the Eighth Amendment. (Dkt. 33, p. 6-7 n.11). Nevertheless, the question regarding the validity of this cruel and unusual punishment challenge to the statute raised by the Defendant need not detain us long.

In this case, the Defendant's argument is unsuccessful for two reasons. First, the Defendant merely "suggests" that the penalty sanctioned for the crack cocaine offense with which he is charged would be cruel and unusual punishment (Dkt. 33, p. 7 n.11); however, he offers no legal argument in support of this conclusory statement appearing in a footnote.

Second, pursuant to the decision of *United States v. Solomon*, 848 F.2d 156 (11th Cir. 1988), Eleventh Circuit precedent, accordingly, forecloses the Defendant's argument. In *Solomon*, the Court applied the precedent as established in *United States v. Holmes*, 838 F.2d 1175 (11th Cir. 1988), and held that a sentence applying Section 841(b)(1)(B)(iii), which requires that a mandatory minimum prison sentence of a five (5) year term of imprisonment be imposed for the possession with the intent to distribute at least five (5) grams of crack cocaine,

7

does not violate the Eighth Amendment. *Id.* at 157; *U.S. v. McNeil*, No. 09-14862, 2010 U.S

App. LEXIS 8531, at *4 (11th Cir. Apr. 23, 2010) (unpublished) (reaffirming the holding in

*Solomon*).[2] The *Solomon* court rejected an identical constitutional challenge to the mandatory

minimum sentencing requirements of Title 21 U.S.C. § 841(b)(1)(B)(iii) as is charged in this

case. Therefore, the *Solomon* precedent is applicable here, and, as such, the Court finds no

constitutional violation of the Eighth Amendment.

### B. Fifth Amendment: Equal Protection Clause

Next, the Defendant contends that Section 841 is unconstitutional as a violation of both

the Equal Protection and Due Process Clauses of the United States Constitution, but he does not

distinguish his equal protection challenge of the statute from his due process challenge.

Essentially, he asserts that the statutory mandatory minimums violate these clauses for two

reasons: (1) the imposition of the 100:1 ratio of crack to powder cocaine "with its invidious

racial effects is so arbitrary and capricious as to lack a rational basis"; and (2) this legislation's

"crack cocaine mandatory minimums are not necessary and narrowly tailored to achieve a

compelling government interest." (Dkt 33, p. 6-7). As such, the Defendant requested that the

statute be remedied by striking the mandatory minimums. *Id.* at 7. The Court, however, rejects

these challenges.

The threshold question in a Fifth Amendment[3] equal protection challenge is whether the

legislation results in dissimilar treatment of similarly situated persons. *Leib v. Hillsborough*

---

[2] Although not controlling, unpublished reports provide persuasive authority in the 11th Circuit. U.S. Ct. App. 11th Cir. Rule 36-2.

[3] While the Fifth Amendment does not contain an equal protection clause as seen in the Fourteenth Amendment, it is well settled that the Fifth Amendment's Due Process Clause does encompass an equal protection component. *Delaware Tribal Business Committee v. Weeks*, 430 U.S. 73, 75 (1977). A challenge to federal legislation based on Fifth Amendment equal

*County Pub. Transp. Comm'n*, 558 F.3d 1301, 1305 (11th Cir. 2009) (citation omitted). "When legislation classifies persons in such a way that they receive different treatment under the law, the degree of scrutiny the court applies depends upon the basis for the classification." *Id.* Where the challenged statute neither impinges on a fundamental right, nor creates a suspect class, then it is subject only to rational basis review rather than strict scrutiny to survive an equal protection challenge—that is, the law demands no more than a reasonable relationship between the statute and a legitimate government purpose. *Id.*

    1.  Scope of review: Heightened scrutiny is inappropriate.

The Eleventh Circuit has deemed the rational basis test appropriate as opposed to heightened scrutiny since 21 U.S.C. § 841 is not discriminatory on its face. *U.S. v. King*, 972 F.2d 1259, 1259 (11th Cir. 1992); *see also Solomon*, 848 F.2d at 157 ("the statute does not discriminate on the basis of a suspect classification or the exercise of a fundamental right."). Nevertheless, the Defendant invites the Court to subject the legislation to strict scrutiny review. He argues that the statutory mandatory minimum is unconstitutional because: the application of this statute leads to an invidious disparate impact since a disproportionate number of African Americans are sentenced for crack cocaine, and Congressional inaction to these racial effects is tantamount to discriminatory intent. (Dkt. 33, p. 6, 17).

The Eleventh Circuit has repeatedly rejected identical requests to find the wide discrepancy in sentencing between crack and powder cocaine offenses in violation of the Equal Protection Clause, despite recognition of the statute's disparate impact on African Americans. *U.S. v.* Butler, 102 F.3d 1191, 1194-95 (11th Cir. 1997); *King*, 972 F.2d at 1260. Similarly, the

---

protection claims cognizable under the amendment's Due Process Clause is analyzed by the same rules employed to test the validity of state legislation under the Fourteenth Amendment. *Weinberger v. Wiesenfeld*, 420 U.S. 636, 638 (1975).

Supreme Court has rejected the notion that the disparate impact of a facially neutral law upon a racial minority, alone, violates the constitutional guarantee of equal protection; a showing of disproportionate impact, rather, must be accompanied by proof of discriminatory purpose in order for legislation to be declared unconstitutional since the Equal Protection Clause guarantees equal laws, not equal results. [4] *Personnel Adm'r v. Feeney*, 442 U.S. 256, 261 (1979).

Nevertheless, attempts to trace the disproportionate impact on African Americans to a discriminatory intent on behalf of Congress in enacting the statute have also been rejected. *U.S. v. Hanna*, 153 F.3d 1268, 1288 n.1 (11th Cir. 1998) (per curium) (finding "no evidence" that Congress's rejection of the Commission's proposal to alter the crack/powder ratio was motivated by "racial animus."); *U.S. v. Byse*, 28 F.3d 1165, 1170-71 (11th Cir. 1994) (holding that the disparate impact of 21 U.S.C. § 841(b)(1) was insufficient to show a discriminatory purpose behind Congress' enactment and that it is not amenable to strict scrutiny, but is subject only to rational basis review). Attempting to distinguish his claim from this authority, the Defendant proposes that Congress' *continued* failure to address the statute's crack and powder cocaine sentencing disparity, despite being put on notice of its discriminatory impact by the Commission, evidences a discriminatory purpose. (Dkt. 33, p. 6, 17, 20).

In determining whether discriminatory purpose was a motivating factor in Congress' decision, the Court must consider the circumstantial and direct evidence of intent including: the impact of the official action, the historical background of the decision, the specific sequence of

---

[4] Only when a party can show intentional discrimination by the Government is the application of the more rigorous strict scrutiny test of a classification affecting a protected class properly invoked. *Wis. V. City of New York*, 517 U.S. 1, 18 n.8 (1996) (citing *Washington v. Davis*, 426 U.S. 229, 239-245 (1976); *see also Rogers v. Lodge*, 458 U.S. 613, 617 n.5 (1982) ("Purposeful racial discrimination invokes the strictest scrutiny of adverse differential treatment. Absent such purpose, differential impact is subject only to the test of rationality.").

events leading up to the challenged decision, procedural and substantive departures, and legislative or administrative history. *Arlington Heights v. Metro. Hous. Dev. Corp.*, 429 U.S. 252, 265-68 (1977).

In this instance, the Court finds a lack of evidence, when considering these factors, demonstrating that this sentencing provision was enacted because it would accomplish a collateral goal of creating harsher penalties for African Americans who possess and/or distribute cocaine. There is little about the sequence of events leading up to the enactment of the legislation that would spark suspicion of discriminatory purpose. In fact, the Eleventh Circuit has noted that there is no evidence of discriminatory intent in the legislative history of 21 U.S.C. § 841. *Byse*, 28 F.3d at 1171. Furthermore, the Defendant alleges no such evidence, except to rely solely on the known impact of the statute, and Congress' supposed continued inaction in this regard to support a finding of discriminatory intent. The impact of the statute does bear more heavily on racial minorities; however, discriminatory purpose implies more than intent as awareness of consequences or volition. *Feeney*, 442 U.S. at 278. Indeed, the Eleventh Circuit recently upheld Section 841 against an identical argument according to reasoning similar to that of the aforementioned analysis. *U.S. v. McClendon*, No. 09-15063, 2010 U.S. App. LEXIS 10244, at *7-8 (11th Cir. May 19, 2010) (unpublished) (requiring that the defendant show "more than Congress's 'awareness of consequences,' to establish that Congress has a discriminatory purpose in failing to enact legislation that equalized the penalties for crack and powder cocaine offenses.").

Discriminatory purpose requires, in this case, Congress to have "selected or reaffirmed a particular course of action at least in part 'because of,' not merely 'in spite of,' its adverse effects upon an identifiable group." *Feeney*, 442 U.S. at 278. However, without more factual allegations,

11

the Court cannot necessarily conclude, as the Defendant purports (Dkt. 33, p. 17), that Congress has reaffirmed the statute's sentencing provisions *because of* these discriminatory effects from Congress' inaction despite full knowledge of this impact; it is not plain from the results its actions achieve. *See Id.* at 279 n.24 (What an official entity "is 'up to' *may* be plain from the results its actions achieve, or the results they avoid.").

Assuming, arguendo, that the racial impact was an inevitable or foreseeable consequence of the statute, the Supreme Court has stated that when, as here, "a legislative policy that has in itself always been deemed to be legitimate, and … the statutory history and all of the available evidence affirmatively demonstrate the opposite, the inference simply fails to ripen into proof." *Id.* at 279 n.25.

Furthermore, Congress *is* addressing the disparate impact of the challenged statute. In 2009, two bills were introduced. The first bill is aimed at targeting cocaine kingpins and addressing the sentencing disparity between crack and powder cocaine. Drug Sentencing Reform and Cocaine Kingpin Trafficking Act of 2009, H.R. 265, 111th Cong. (as introduced in House, Jan. 7, 2009). The second bill, seeking to restore fairness to Federal cocaine sentencing, proposes to amend 21 U.S.C. § 841, resulting, among other things, in a reduction of the ratio between crack and powder cocaine sentences. Fair Sentencing Act of 2010, S. 1789, 111th Cong. (as introduced in Senate, Oct. 15, 2009). On March 17, 2010, the Fair Sentencing Act passed Senate with an amendment by unanimous consent and was received in the House the following day where it is still undergoing review in committees. S. 1789. Therefore, the Defendant's claim regarding Congressional inaction and discriminatory intent is rendered moot. Since the Defendant has not shown intentional discrimination by Congress, the application of strict

scrutiny is inappropriate. Rather, his claims of disparate impact must be analyzed under rational basis review.

    2.  Title 21 U.S.C. § 841 withstands the rational basis test.

Challenged legislation survives rational basis review as long as, in enacting legislation, the legislature is acting in pursuit of a permissible government interest that bears a rational relationship to the means chosen to achieve that interest. *Leib*, 558 F.3d at 1306. Unless it is proven, beyond a reasonable doubt, that the classification drawn by the statute does not withstand this rational basis standard, the legislation is presumed to be constitutional and will be sustained. *City of Cleburne v. Cleburne Living Center*, 473 U.S. 432, 440 (1985). Rational basis review is highly deferential; legislative acts will be held unconstitutional under this standard in only the most exceptional circumstances. *Doe v. Moore*, 410 F.3d 1337, 1345 911th Cir. 2005).

The Defendant maintains, alternatively that there is also no rational basis for the "arbitrary and capricious" 100:1 sentencing disparity between crack and powder cocaine. (Dkt. 33, p. 6). Acknowledging that the statute has withstood many similar constitutional attacks over the last twenty years, the Defendant argues that after the Eleventh Circuit decided *King* and *Byse*, the Commission submitted four reports between the years of 1995 and 2007;[5] these reports allegedly now expose the statute to renewed attacks because they invalidate the assumptions underlying the sentencing disparity and report the statute's racially disparate impact. (Dkt. 33, p. 3-4). However, the Defendant's contention fails for two reasons.

---

[5] (Dkt. 33-1) (U.S. SENTENCING COMM'N, SPECIAL REPORT TO THE CONGRESS: COCAINE AND FEDERAL SENTENCING POLICY (1995)); (Dkt. 33-2) (U.S. SENTENCING COMM'N, SPECIAL REPORT TO THE CONGRESS: COCAINE AND FEDERAL SENTENCING POLICY (1997)); U.S. SENTENCING COMM'N, SPECIAL REPORT TO THE CONGRESS: COCAINE AND FEDERAL SENTENCING POLICY (2002), *available at* http://www.ussc.gov/r_congress/02crack/2002crackrpt.htm; (Dkt. 33-3) (U.S. SENTENCING COMM'N, SPECIAL REPORT TO THE CONGRESS: COCAINE AND FEDERAL SENTENCING POLICY (2007)).

First, the Defendant overstates the findings expressed in the Commission's reports. Although the Anti-Drug Abuse Act of 1986 (hereinafter 1986 Act)[6] left little legislative history, review of the Congressional hearings reveal that "Congress imposed a harsher penalty for base cocaine than for powder cocaine because it "(1) has a more rapid onset of action, (2) is more potent, (3) is more highly addictive, (4) is less expensive than cocaine powder, and (5) has widespread availability." *Byse*, 28 F.3d at 1169 (quoting *United States v. Thurmond*, 7 F.3d 947, 953 (10th Cir. 1993) (citing statements from congressional hearings); *see also United States v. Hamilton*, 428 F. Supp. 2d 1253, 1258 n.12 (2006) (same). Contrary to the Defendant's assertion (Dkt. 33, p. 10), the Commission's latest reports do not indicate that *all* of the assumptions underlying the sentencing differentials in 21 U.S.C. § 841 are incorrect.

Despite Commission data that disproves several of the reasons underlying the legislation,[7] the following assumptions have proven to be true: crack cocaine, which is smoked, "always represents the most addictive form of cocaine," and poses a greater risk of addiction to the typical user than powder cocaine which is snorted; crack cocaine has a more rapid onset than snorting powder cocaine, which is the prominent means of use; and crack cocaine's relatively

---

[6] The challenged statutory provision is contained in the Anti-Drug Abuse Act of 1986, which is where the 100:1 ratio first appeared. Pub. L. 99-570, 100 Stat. 3207 (1986).

[7] The Commission made the following findings which disprove several of the assumptions underlying the sentence disparity between crack and powder cocaine in Title 21 U.S.C. § 841: cocaine in any form produces the same physiological and psychotropic effects; the current penalty structure was based on beliefs about the association of crack cocaine offenses with certain harmful and violent conduct that are no longer accurate; contrary to the general objective of the 1986 Act to target resources on serious and major traffickers, two-thirds of federal crack cocaine offenders were street-level dealers; the epidemic of crack use by youth never materialized to the extent feared, and the use of crack cocaine has remained stable at a significantly lower level than powder cocaine for the period of 1988-1998. U.S. SENTENCING COMM'N, SPECIAL REPORT TO THE CONGRESS: COCAINE AND FEDERAL SENTENCING POLICY (2002), v-vii. 68, *available at* http://www.ussc.gov/r_congress/02crack/2002crackrpt.htm.

low cost-per-dose has made it more readily marketable than powder cocaine to large numbers of lower income people. U.S. SENTENCING COMM'N, SPECIAL REPORT TO THE CONGRESS: COCAINE AND FEDERAL SENTENCING POLICY (2002), 93-94 , *available at* http://www.ussc.gov/r_congress/02crack/2002crackrpt.htm; (Dkt. 33-2) (U.S. SENTENCING COMM'N, SPECIAL REPORT TO THE CONGRESS: COCAINE AND FEDERAL SENTENCING POLICY, vii-viii (1997)). Furthermore, the Commission recommended only that the ratio be "modified", not completely eliminated, which only supports the rationality behind this challenged legislation. (Dkt. 33-3) (U.S. SENTENCING COMM'N, SPECIAL REPORT TO THE CONGRESS: COCAINE AND FEDERAL SENTENCING POLICY (2007)).

In our previous cases, we have held that imposing longer sentences on crack cocaine offenders is rationally related to the legitimate purpose of distinguishing between distinguishable drugs. *Hanna*, 153 F.3d at 1288 (citing *United States v. Terry*, 60 F.3d 1541, 1544-45 (11th Cir. 1995). The Court readily concludes that there is a rational basis for the continued disparity between the crack and powder cocaine sentencing scheme so as to withstand scrutiny under the rational basis standard. In light of the Commission's findings, Congress could have rationally concluded that crack cocaine's more addictive form, quicker onset, and more readily marketability than powder cocaine leads to a greater threat to the public welfare, and, thus, warrants a distinguishable and harsher punishment for its possession and/or distribution. It is not the Court's responsibility to "determine whether this was correct judgment or whether it best accomplishes Congressional objectives; rather, [its] responsibility is only to determine whether Congress' judgment was rational." *Solomon*, 848 F.2d at 158 (quoting *Holmes*, 838 F.2d at 1178).

Since the disparity is rational, the Defendant's remaining argument is that the current

degree of disparity between crack and powder cocaine sentences is irrational. However, the

Supreme Court has stated that "[w]hatever views may be entertained regarding severity of

punishment" are exclusively questions of legislative policy, *Gore v. United States*, 357 U.S. 386,

393 (1958); *see Gregg v. Georgia*, 428 U.S. 153, 176 (1976) (specification of punishments

involve 'questions of legislative policy[.]'") (internal citations omitted); courts should not

"'assume primary responsibility in choosing between competing political, economic, and social

pressures.'" *Gregg v. Georgia*, 428 U.S. 153, 175-76 (1976) (internal citations omitted). Indeed,

the Commission echoed this principle in its 2007 report:

> Determining the appropriate threshold quantities for triggering the mandatory
> minimum penalties is a difficult and imprecise undertaking that ultimately is a
> policy judgment, based upon a balancing of competing considerations, which
> Congress is will suited to make.

(Dkt. 33-3, p. 18) (U.S. SENTENCING COMM'N, SPECIAL REPORT TO THE CONGRESS:

COCAINE AND FEDERAL SENTENCING POLICY, 8 (2007)); *accord Arlington Heights*, 429

U.S. at 265 (since legislators are "properly concerned with balancing numerous

competing considerations" courts refrain from reviewing the merits of their decisions,

absent a showing of arbitrariness or irrationality).

Thus, since a rational basis for the existence of a disparity between powder and

crack cocaine sentences still persists, the weight given to the greater social ills produced

by crack cocaine and the resulting degree to which the penalties should differ for powder

and powder cocaine are essentially policy considerations not within the province of the

judiciary. It is properly the decision of Congress whether to change, and if so to what

degree, the current 100:1 ratio.

Secondly, since the first of the Commission's four reports in 1995, the Eleventh Circuit precedent has repeatedly held that the sentencing disparity between crack and powder cocaine offenses is not rendered irrational and, thus, unconstitutional by the Commission's discoveries. *Hanna*, 153 U.S. at 1289 (following judicial precedent that crack cocaine passed the rational basis test and that imposing longer sentences on crack cocaine offenders was rationally related to the legitimate purpose despite the new findings made by the Commission and communicated to Congress); *United States v. Butler*, 102 F.3d 1191, 1194-95 (11th Cir. 1997) (holding a rational basis existed for differing sentences between crack and powder cocaine); *United States v. Sloan*, 97 F.3d 1378, 1383-84 (11th Cir. 1996) (same); *United States v. Terry*, 60 F.3d at 1544-45 (same); *McClendon*, 2010 U.S. App. LEXIS 10244 at *7 (unpublished) (same).

Additionally, in 1998, the Eleventh Circuit noted that Congress clearly disapproved of the Commission's conclusions concerning the sentencing differential since it rejected the Commission's proposed amendment, and decided, rather, to maintain the 100:1 ratio. *Hanna*, 153 U.S. at 1288-89. Accordingly, the court concluded, it need not give the Commission's findings "any interpretative weight, and instead, must adhere to this Circuit's precedent." *Id.* at 1289. Therefore, the Defendant's argument has been addressed and rejected by precedential cases; as such, 21 U.S.C. § 841 survives the rational basis test, and consequently, is in compliance with the Equal Protection Clause.

## C. Fifth Amendment: Due Process Clause

To the extent that the Defendant argues that the subject statute also violates the Fifth Amendment's Due Process Clause[8], the Court finds this constitutional contention also to be

---

[8] The Fifth Amendment's guarantee of due process declares that no person will "be deprived of life, liberty, or property without due process of law." U.S. Const. Amend. V.

17

unavailing. He claims that the heightened statutory punishments for crack cocaine offenses are "arbitrary, and discriminatory." (Dkt. 33, p. 2, 6).

Due to the fact that 21 U.S.C. § 841 neither interferes with a fundamental right nor singles out a suspect classification, *Solomon*, 848 F.2d at 157, due process demands no more than that the statute be rationally related to a legitimate government purpose. *See Byse*, 28 F.2d at 1171 (quoting *Nebbia v. New York*, 291 U.S. 502, 537 (1934)). In fact, the rational basis test is identical under the rubrics of equal protection and due process.

The Defendant has mingled his equal protection and due process constitutional challenges, and, thus, the Court has encompassed any due process contentions in the context of its equal protection analysis. Moreover, this claim has been foreclosed by the Court's precedent, and, thus, is without merit. *See, e.g., Hanna*, 153 F.3d 1286; *Harden*, 37 F.3d 595 (11th Cir. 1994); *Byse*, 28 F.3d 1165; *United States v. Lawrence*, 972 F.2d 1580, 1583 (11th Cir. 1992); *Solomon*, 848 F.2d 156; *United States v. Williams*, 876 F.2d 1521, 1525 (11th Cir. 1989); *Holmes*, 838 F.2d 1175; *McClendon*, 2010 U.S. App. LEXIS 10244 (unpublished).

## CONCLUSION

For the foregoing reasons, the Court declares 21 U.S.C. § 841 constitutional and in compliance with the Cruel and Unusual Punishment, Equal Protection, and Due Process Clause. The Court adheres to Eleventh Circuit precedent, finding the statute's 100:1 sentencing differential between crack and powder cocaine rationally related to a legitimate government interest. Additionally, there is nothing distinguishable about the Defendant's claims from precedent that would potentially render the crack cocaine sentencing provisions unconstitutional according to these three clauses of the United States Constitution. Therefore, the Defendant's Motion to Declare Title 21 U.S.C. Section 841 Unconstitutional is **denied**; as such, the

Defendants Motion to Dismiss Counts Three, Four, and Five of the Indictment as being unconstitutional as applied is consequently **denied** as well. Accordingly, it is:

**ORDERED** that the Defendant's Motion to Declare Title 21 U.S.C., Section 841 Unconstitutional, Motion to Dismiss Counts Three, Four, and Five of the Indictment, and Memorandum of Law in support thereof are **DENIED**.

**DONE AND ORDERED** in Chambers, in Tampa, Florida on this 30th day of July, 2010.



ELIZABETH A. KOVACHEVICH
UNITED STATES DISTRICT JUDGE

Copies To: All Parties and Counsel of Record.